UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| KWANG YONG SHIN, | |
| Plaintiff, | Case No. 2:25-cv-00003 |
| v. | Judge Waverly D. Crenshaw, Jr. |
| | Magistrate Judge Alistair E. Newbern |
| SUN POULTRY SERVICES INC., | |
| Defendant. | |

To:     The Honorable Waverly D. Crenshaw, Jr., District Judge

## REPORT AND RECOMMENDATION

This employment discrimination action arises out of pro se Plaintiff Kwang Yong Shin's employment with Defendant Sun Poultry Services, Inc. (Sun Poultry).[1] (Doc. No. 1.) Sun Poultry has filed a motion to dismiss this action under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process or under Rule 12(b)(6) for failure to state a claim on which relief can be granted; alternatively, Sun Poultry moves for a more definite statement under Rule 12(e) or to strike allegations in the complaint under Rule 12(f). (Doc. No. 8.) Kwang Yong Shin has responded in opposition to Sun Poultry's motion (Doc. No. 15), and Sun Poultry has filed a reply (Doc. No. 18).

For the reasons that follow, the Magistrate Judge will recommend that the Court deny Sun Poultry's motion.

---

[1]     Kwang Yong Shin identifies himself as Korean-American. (Doc. No. 1.) "In South Korea, one's family name is typically said or written first, followed by one's given name." *Ho Myung Moolsan, Co. v. Manitou Mineral Water, Inc.*, No. 07 Civ. 07483, 2011 WL 2226901, at *1 n.1 (S.D.N.Y. June 7, 2011). The Court follows the complaint's naming conventions, which refer to the plaintiff by his full name.

# I.  Background

## A.  Factual Background

Kwang Yong Shin is a Korean-American United States citizen who has worked as a chick sexer for more than thirty years. (Doc. No. 1-2.) "A chick sexer determines the sex of newly hatched chicks, a critical task that requires years of training, high concentration, experience, and dexterity." (*Id.* at PageID# 12.) Kwang Yong Shin alleges that the poultry "industry is dominated by two major corporations, Aviagen, Inc. and Cobb-Vantress, Inc.," both of which "subcontract their hatchery operations, including chick sexing, to various service providers" including Sun Poultry. (*Id.*)

Sun Poultry is owned and managed by Jae Young Shim and his family. (Doc. Nos. 1, 1-2.) Kwang Yong Shin alleges that Sun Poultry "recruits young workers from Mexico and South America . . . , including minors not permitted to work under U.S. labor laws," and employs "these undocumented workers . . . as chick sexers, farm workers, and [in] other roles." (Doc. No. 1-2, PageID# 13–14.) He alleges that, "[f]or over 20 years, illegal workers have been paying large sums to secure employment through Sun Poultry . . . [and], [e]ven after being hired, . . . continue to pay monthly fees as a condition of their employment." (*Id.*)

Kwang Yong Shin alleges that Sun Poultry Vice President Chun Jin Min bragged about replacing older Korean-American employees with undocumented workers and that Chun Jin Min "regularly and publicly announced that for every 5–10 illegal workers arriving from Mexico in a given month, an equivalent number of elderly Korean-American citizens or permanent residents over the age of 60 will be fired." (*Id.* at PageID# 17.) Kwang Yong Shin alleges that "[t]hese statements . . . have caused significant emotional distress and anxiety for [him] and [his] colleagues." (*Id.*)

2

According to Kwang Yong Shin, "[f]rom 2017 to 2024, Sun Poultry . . . deducted 10% from [his] payroll . . . without explanation." (*Id.* at PageID# 14.) He also alleges that, "[b]etween 2018 and 2024, [he] undertook dozens of business trips for Sun Poultry . . . for which [he] was never fully reimbursed." (*Id.* at PageID# 15.)

Kwang Yong Shin further alleges that his wife worked for Sun Poultry and that, sometime after 2018, Sun Poultry "relocated" them "to different states for work" by assigning his wife "to a hatchery in Kentucky[.]" (*Id.* at PageID# 18.) He alleges that "all 12 technicians, supervisors, and managers" at the Kentucky facility "were illegal immigrants from Mexico" who "were placed at the same work site, while [Kwang Yong Shin and his] wife . . . were separated." (*Id.* at PageID# 18–19.) Kwan Yong Shin states that "[t]his unreasonable and discriminatory policy caused significant strain on [his and his wife's] relationship and ultimately led to [their] divorce" and that "[t]his separation and family disruption had a profound impact on [his] two daughters." (*Id.* at PageID# 19.) His "older daughter suffered from frequent trips to the emergency room and continues to experience ongoing severe mental health issues" while his "younger daughter also developed severe symptoms requiring regular emergency care." (*Id.*)

Kwang Yong Shin alleges that he filed a lawsuit against Sun Poultry in the United States District Court for the Northern District of Georgia "to expose [Sun Poultry's] unlawful and discriminatory practices[,]" and that Sun Poultry terminated his employment in "retaliation for [his] whistleblowing activities." (*Id.* at PageID# 16); *see also* Compl., *Kwang Young Shin v. Sun Poultry Servs., Inc.*, Case No. 1:23-cv-04439 (N.D. Ga. Oct. 13, 2023), ECF No. 5. He alleges that, on May 30, 2024, when he was working for Sun Poultry at a Cobb-Vantress hatchery in Lafayette, Tennessee, Sun Poultry terminated his employment and, "with the assistance and

acquiescence of . . . Cobb-Vantress Inc., deliberately altered the door codes to the workplace" so that Kwang Yong Shin could no longer enter the hatchery. (Doc. No. 1-2, PageID# 16.)

He further alleges that, "[d]uring [his] lawsuit in the U.S. District Court in Atlanta, Georgia," he and his family experienced harassment from Jae Young Shim's son, Sim Young-jin, who had been "[r]ecently released from prison after serving 12 years for child sexual assault[.]" (*Id.* at PageID# 19.) Kwang Yong Shin alleges that "Sim Young-jin would park his car outside [Kwang Yong Shin's] home and watch [his] family when [he] was not present." (*Id.*) He alleges that "[t]his incident further worsened [his] older daughter's mental health, leaving her in constant fear" such that "[s]he now requires 24-hour care at home[.]" (*Id.*) Kwang Yong Shin states that he "now struggle[s] with severe depression and insomnia, compounded by the mental distress caused by [his] experiences with the company." (*Id.*)

**B.      Procedural History**

Kwang Yong Shin initiated this action on January 9, 2025, by paying the Court's civil filing fee (Doc. No. 1-4) and filing a form complaint for employment discrimination against Sun Poultry (Doc. No. 1). Kwang Yong Shin attached two documents to his complaint: a copy of a right-to-sue letter that he received from the United States Equal Employment Opportunity Commission (EEOC) (Doc. No. 1-1) and an eleven-page type-written description of his alleged experiences and requested relief (Doc. No. 1-2). Kwang Yong Shin checked boxes on the form complaint indicating that Sun Poultry discriminated against him based on his race and age in violation of Title VII and the ADEA and that Sun Poultry retaliated against him in violation of these statutes. (Doc. No. 1.) Kwang Yong Shin's complaint seeks $3 million in damages (*id.*) and asks "this Court to severely punish Sun Poultry . . . for their illegal activities" (Doc. No. 1-2, PageID# 21).

Also on January 9, 2025, Kwang Yong Shin requested and the Clerk of Court issued a summons addressed to Jae Young Shim at an address in Woodstock, Georgia. (Doc. No. 2.) On January 17, 2025, Kwang Yong Shin filed a proof of service affidavit stating that he served Sun Poultry on January 13, 2025, by leaving the summons at Jae Young Shim's residence.[2] (Doc. No. 6-1.) He also attached a shipment receipt and proof of delivery statement from United Parcel Service (UPS) showing that UPS delivered a shipment of documents addressed to Sun Poultry and Jae Young Shim to a residential address in Woodstock on January 13, 2025. (*Id.*)

On February 3, 2025, Sun Poultry appeared and filed a motion to dismiss Kwang Yong Shin's complaint under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process or under Rule 12(b)(6) for failure to state a claim on which relief can be granted; in the alternative, Sun Poultry moves for a more definite statement of claims under Rule 12(e) or to strike allegations from the complaint under Rule 12(f). (Doc. No. 8.) Kwang Yong Shin responded in opposition to Sun Poultry's motion (Doc. No. 15), and Sun Poultry filed a reply (Doc. No. 18).

On March 3, 2023, after briefing of Sun Poultry's motion to dismiss was complete, Kwang Yong Shin filed a "motion to file proof of service" stating that, in response to Sun Poultry's motion to dismiss, he re-served Jae Young Shim, Sun Poultry's attorney, and the attorney's law firm via United States Postal Service (USPS) certified mail.[3] (Doc. No. 23, PageID# 121.) Kwang Yong Shin attached one certified mail domestic return receipt showing that a mailing sent to "Shelby Watkins[,] Tyson Foods (Cobb-Vantress)" at an address in Springdale, Arkansas, was delivered

---

[2]     In a concurrently filed memorandum order, the Court has construed Kwang Yong Shin's motion to recognize proof of delivery (Doc. No. 6) as part of his response in opposition to Sun Poultry's motion to dismiss for insufficient service of process.

[3]     In a concurrently filed memorandum order, the Court has construed Kwang Yong Shin's motion to file proof of service (Doc. No. 23) as part of his response in opposition to Sun Poultry's motion to dismiss for insufficient service of process.

on February 18, 2025, and signed for by an unidentified individual. (Doc. No. 23-1, PageID# 123.) Sun Poultry responded in opposition to Kwang Yong Shin's "motion," arguing that Watkins, Tyson, and Cobb-Vantress are not authorized to accept service on behalf of Sun Poultry. (Doc. No. 27.) Kwang Yong Shin filed a reply attaching three additional certified mail return receipts, including two for mailings sent to Jae Young Shim and one for a mailing sent to Sun Poultry's attorney. (Doc. Nos. 28, 28-1.) He filed a second copy of the same three certified mail return receipts the following day. (Doc. No. 29-1.) On April 10, 2025, Kwang Yong Shin filed two additional certified mail receipts for items sent to Sun Poultry's attorney. (Doc. No. 32-1.)

## II. Legal Standards

### A. Sufficiency of Service Under Rule 12(b)(5)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(5) challenges "the manner or method of service" of a summons or complaint. *Buck Mountain Cmty. Org. v. Tenn. Valley Auth.*, 629 F. Supp. 2d 785, 792 n.5 (M.D. Tenn. 2009); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353 (4th ed. suppl. May 2025) ("A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery, the lack of delivery, or the timeliness of delivery of the summons and complaint." (footnotes omitted)). "In deciding a motion to dismiss under Rule 12(b)(5), the court may refer to record evidence in determining the sufficiency of service[,]" including "uncontroverted affidavits . . . ." *Metro. Alloys Corp. v. State Metals Indus., Inc.*, 416 F. Supp. 2d 561, 563 (E.D. Mich. 2006); *see also Spencer v. Caracal Int'l, LLC*, 516 F. Supp. 3d 755, 758 (M.D. Tenn. 2021) (finding that courts considering Rule 12(b)(5) motions "'may look to "record evidence" and "uncontroverted affidavits" in determining'" sufficiency of service (quoting *Chapman v. Lawson*, 89 F. Supp. 3d 959, 971 (S.D. Ohio 2015))). The plaintiff bears the burden to establish that service was proper. *Spencer*, 516 F.

Supp. 3d at 758; *Sawyer v. Lexington-Fayette Urb. Cnty. Gov't*, 18 F. App'x 285, 287 (6th Cir. 2001) (citing *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996)).

Even in cases where a plaintiff fails to demonstrate that service was proper, "a court has discretion to either dismiss the action or quash service and retain the case." *Young's Trading Co. v. Fancy Import, Inc.*, 222 F.R.D. 341, 343 (W.D. Tenn. 2004); *see also DASFortus Techs., LLC v. Precision Prods. Mfg. Co.*, Case No. 3:07-cv-0866, 2008 WL 11388115, at *6 (M.D. Tenn. Nov. 10, 2008) (quoting *id.*); *Fedele v. INEOS Pigments USA*, Case No. 1:24-cv-01225, 2025 WL 50240, at *5 (N.D. Ohio Jan. 8, 2025) (collecting authority); 5B Wright & Miller § 1354 ("The federal courts have broad discretion to dismiss the action or to retain the case but quash the service that has been made on the defendant."). The Sixth Circuit has long held "that if the first service of process is ineffective, a motion to dismiss should not be granted, but the case should be retained for proper service later." *Stern v. Beer*, 200 F.2d 794, 795 (6th Cir. 1952); *see also Fedorova v. Foley*, Case No. 1:22-cv-991, 2023 WL 5016652, at *2 (W.D. Mich. Apr. 26, 2023) (citing *id.* for proposition that "the Sixth Circuit has expressed a preference to treat the first motion for improper service as a motion to quash").

### B.    Sufficiency of Claims Under Rule 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz*

*v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Kwang Yong Shin appears pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 977 (6th Cir. 2012). "[C]ourts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## C. Sufficiency of Pleading Under Rule 12(e) & Motions to Strike Under Rule 12(f)

Federal Rule of Civil Procedure 12(e) provides that "[a] party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Federal courts generally disfavor motions for more definite statements" and "rarely grant such motions" "[i]n view of the notice pleading standards of Rule 8(a)(2) and the opportunity for extensive pretrial discovery . . . ." *Fed. Ins. Co. v. Webne*, 513 F. Supp. 2d 921, 924 (N.D. Ohio 2007); *see also McClanahan v. Medicredit, Inc.*, No. 3:19-cv-

8

00163, 2019 WL 1755504, at *1 (M.D. Tenn. Apr. 19, 2019) (same). However, a motion under Rule 12(e) may be granted where the complaint fails to meet the pleading requirements of Rule 8(a)(2). *See Acosta v. Peregrino*, No. 3:17-cv-01381, 2018 WL 2045938, at *1 (M.D. Tenn. May 2, 2018); *Hilska v. Jones*, 217 F.R.D. 16, 22 (D.D.C. 2003) ("Mindful that all litigants are entitled to proper notice pleading under Rule 8(a), . . . the court will grant relief pursuant to Rule 12(e) where the pleading is 'so vague or ambiguous that a party cannot reasonably be required to frame a response.'" (alteration in original) (quoting Fed. R. Civ. P. 12(e))).

Federal Rule of Civil Procedure 12(f) provides that the Court may, upon a party's motion or sua sponte, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are viewed with disfavor and are not frequently granted." *Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015); *see also Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) ("[T]he action of striking a pleading should be sparingly used by the courts . . . [and] is a drastic remedy to be resorted to only when required for the purposes of justice."). This reluctance to strike pleadings stems from "the practical difficulty of deciding cases without a factual record . . ." *Brown & Williamson Tobacco Corp.*, 201 F.2d at 822, and the potentially "dilatory and often harassing character" of a motion to strike, 5C Wright & Miller § 1381 (3d ed. suppl. May 2025).

## III.     Analysis

### A.     Sufficiency of Service

"'[T]he requirement of proper service of process "is not some mindless technicality[,]'" nor is it 'meant to be a game or obstacle course for plaintiffs[.]'" *Emiabata v. Farmers Ins. Corp.*, Case No. 3:23-cv-00263, 2024 WL 4940543, at *3 (M.D. Tenn. Dec. 2, 2024) (first and second alterations in original) (first quoting *Friedman v. Est. of Presser*, 929 F.2d 1151, 1156 (6th Cir.

1991); and then quoting *Ace Am. Ins. Co. v. Meadowlands Dev. Ltd. P'ship*, 140 F. Supp. 3d 450, 455 (E.D. Pa. 2015)). Rather, service of process goes to the heart of a court's ability to hear a case. "[W]ithout proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant." *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012); *see also Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (explaining that "[s]ervice is . . . not only a means of 'notifying a defendant of the commencement of an action against him,' but 'a ritual that marks the court's assertion of jurisdiction over the lawsuit'" (citation omitted)). Where personal jurisdiction is not properly established, a court cannot exercise its authority consistent with due process of law. *See Friedman*, 929 F.2d at 1156–57.

Federal Rule of Civil Procedure 4(m) provides that, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). The Court must extend the time for service upon a showing of good cause, and the Court may exercise its discretion to permit late service even where a plaintiff has not shown good cause. *United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 568 (6th Cir. 2022) (first citing Fed. R. Civ. P. 4(m); and then citing *Henderson v. United States*, 517 U.S. 654, 662 (1996)). Otherwise, the language of Rule 4(m) mandates dismissal, either on motion or by the court on its own initiative. Fed. R. Civ. P. 4(m); *see also Byrd v. Stone*, 94 F.3d 217, 219 & n.3 (6th Cir. 1996). Kwang Yong Shin filed his complaint on January 9, 2025. (Doc. No. 1.) Accordingly, the deadline for him to effect service of process on Sun Poultry was April 9, 2025.

Federal Rule of Civil Procedure 4(c) requires that "[a] summons must be served with a copy of the complaint . . . within the time allowed by Rule 4(m)" by a "person who is at least 18

10

years old and not a party" to the action. Fed. R. Civ. P. 4(c)(1)–(2). "The plaintiff is responsible

for having the summons and complaint served . . . and must furnish the necessary copies to the

person who makes service." Fed. R. Civ. P. 4(c)(1). Rule 4(*l*) requires that, "[u]nless service is

waived, proof of service must be made to the court" and, "[e]xcept for service by a United States

marshal or deputy marshal, proof must be by the server's affidavit." Fed. R. Civ. P. 4(*l*)(1).

Rule 4(h) provides two acceptable methods for serving corporate defendants like Sun

Poultry. *See* Fed. R. Civ. P. 4(h). First, service on a domestic or foreign corporation in a United

States judicial district may be accomplished

> by delivering a copy of the summons and of the complaint to an officer, a managing
> or general agent, or any other agent authorized by appointment or by law to receive
> service of process and—if the agent is one authorized by statute and the statute so
> requires—by also mailing a copy of each to the defendant[.]

Fed. R. Civ. P. 4(h)(1)(B). Courts interpreting this rule have found "that delivery means personal

delivery, not service by mail." *Cunningham v. Select Student Loan Help, LLC*, No. 3:15-cv-00554,

2016 WL 7368595, at *3 (M.D. Tenn. Dec. 20, 2016), *report and recommendation adopted*, 2017

WL 10399393 (M.D. Tenn. May 25, 2017). Here, Kwang Yong Shin's only attempts at service

were made by mail. There is no indication that Kwang Yong Shin caused copies of the summonses

and complaint to be personally delivered to an authorized individual. Rule 4(h)(1)(B) therefore is

not satisfied.

The second method of service under Rule 4(h) allows for service of a corporation "in the

manner prescribed by Rule 4(e)(1) for serving an individual[.]" Fed. R. Civ. P. 4(h)(1)(A). That

method of service involves "following state law for serving a summons . . . in the state where the

district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1). Because this Court is

located in Tennessee and Kwang Yong Shin primarily attempted to serve Sun Poultry in Georgia,

11

service on Sun Poultry in this action may be made in compliance with Tennessee or Georgia law.[4]

Tennessee law allows for service by certified mail in certain circumstances:

> The Tennessee Rules of Civil Procedure provide that service on a defendant located outside of the state may be made in accordance with Tennessee Rule of Civil Procedure 4.04, in a manner prescribed by the state in which service is effected for an action in courts of general jurisdiction of that state, or as directed by the court. Tenn. R. Civ. P. 4.05(1)(a)–(c). Rule 4.04 provides that a domestic corporation may be served "by delivering a copy of the summons and of the complaint to an officer or managing agent thereof, or . . . to any other agent authorized by appointment or by law to receive service on behalf of the corporation." Tenn. R. Civ. P. 4.04(4). Tennessee law also authorizes service of process by certified mail. Tenn. R. Civ. P. 4.04(10). Tennessee Rule of Civil Procedure 4.03(2) provides that service by certified mail is complete only "[i]f the return receipt is signed by the defendant, or by a person designated by Rule 4.04 or by statute[.]" Tenn. R. Civ. P. 4.03(2); *see also Hall v. Haynes*, 319 S.W.3d 564, 577 (Tenn. 2010) (discussing "Rule 4.03's explicit restriction of who[ ] may sign the return receipt"). "[U]nder either [Tennessee] or federal procedural rules, a plaintiff bears the burden of demonstrating that he [or she] has served a copy of the summons and complaint on an officer, managing or general agent, or some other agent authorized by appointment or by law to accept service of process on behalf of the defendant corporation." *Pride v. U.S. Smokeless Tobacco Mfg. Co.*, Civ. No. 3:10-0597, 2011 WL 344105, at *2 (M.D. Tenn. Feb. 1, 2011), *report and recommendation adopted*, 2011 WL 734937 (M.D. Tenn. Feb. 23, 2011).

*Sutton v. Penny Mac Loan Servs., LLC*, Case No. 2:23-cv-00064, 2025 WL 342197, at *11 (M.D. Tenn. Jan. 27, 2025) (alterations in original), *report and recommendation adopted*, 2025 WL 611061 (M.D. Tenn. Feb. 25, 2025).

Unlike Tennessee law, "Georgia law requires personal service unless the defendant executes a [ ] waiver of personal service." *Profit v. Americold Logistics, LLC*, 248 F.R.D. 293, 295 (N.D. Ga. 2008) (citing Ga. Code Ann. § 9-11-4); *see also Madden v. Cleland*, 105 F.R.D. 520, 523 (N.D. Ga. 1985) ("Georgia law has no provision for service by mail."). There is no indication

---

[4] Kwang Yong Shin attempted to serve Cobb-Vantress in Arkansas, but he has not named Cobb-Vantress as a defendant in this action, and there is no indication in the record that Cobb-Vantress is authorized to accept service of process on Sun Poultry's behalf. The Court therefore will not address Arkansas's rules for service of process.

that Sun Poultry has waived personal service in this action. Consequently, Kwang Yong Shin has not shown that any of his attempts to effect service of process by mail comply with Georgia law.

Sun Poultry argues that Kwang Yong Shin's first and second attempts to serve it by mail do not comply with Tennessee law. (Doc. No. 9.) Sun Poultry argues that the first attempt to serve Jae Young Shim by UPS is invalid because Tennessee law does not authorize the use of private mailing services to effect service of process. (*Id.*) Kwang Yong Shin has not identified any authority to support a finding that Tennessee Rule 4.04(10), permits the use of a private package service to accomplish service of process by mail, and other courts in this circuit have found that it does not. *See Hobson v. Billotte*, Civ. No. 3:21-00405, 2021 WL 4342329, at *5 (M.D. Tenn. Sept. 23, 2021) (finding "[p]laintiff's attempted service via UPS fail[ed] to suffice as proper service of process" because "Rule 4.04(10) does not permit the use of a private package service to accomplish service of process by mail"), *report and recommendation adopted*, 2021 WL 4847191 (M.D. Tenn. Oct. 18, 2021); *Est. of Lockner v. Woodard*, No. 2:19-CV-220, 2021 WL 2154168, at *2 (E.D. Tenn. Apr. 27, 2021) (finding that, under Tennessee Rule 4.04(10), "'mail'" "does not" "include[ ] private package services such as FedEx or UPS"), *report and recommendation adopted sub nom. Est. of Lockner v. Washington Cnty.*, 2021 WL 2143128 (E.D. Tenn. May 26, 2021). Even if Kwang Yong Shin had used USPS certified mail, as allowed by Tennessee Rule 4.04(10), there is no signed return receipt for this mailing as required by Tennessee Rule 4.03. The fact that Sun Poultry admits that "Jae Young Shim discovered the summons and complaint left [by UPS] at the front door of his personal residence" on January 13, 2025, does not change this analysis. (Doc. No. 9, PageID# 46.) Under Tennessee law, "actual notice of the lawsuit is not 'a substitute for service of process when the Rules of Civil Procedure so require.'" *Hall*, 319 S.W.3d at 572 (quoting *Frye v. Blue Ridge Neuroscience Ctr., P.C.*, 70 S.W.3d 710, 715 (Tenn. 2002)).

Sun Poultry argues that Kwang Yong Shin's attempt to serve Cobb-Vantress by certified mail is also insufficient to demonstrate service of process on Sun Poultry. (Doc. No. 27.) Kwang Yong Shin filed a certified mail receipt showing that a mailing sent to "Shelby Watkins[,] Tyson Foods (Cobb-Vantress)" at an address in Springdale, Arkansas, was delivered on February 18, 2025, and signed for by an unidentified individual. (Doc. No. 23-1, PageID# 123.) Kwang Yong Shin's complaint alleges that Cobb-Vantress and Sun Poultry have a contractual business relationship (Doc. No. 1-2) and that Kwang Yong Shin was working at the "Cobb-Vantress Hatchery" in Lafayette, Tennessee, when Sun Poultry terminated his employment (Doc. No. 1, PageID# 3). But there is no basis in the record to support a finding that Shelby Watkins, Tyson Foods, or Cobb-Vantress is authorized to accept service of process for Sun Poultry, and Sun Poultry asserts that they are not. Kwang Yong Shin therefore has not shown that this attempt at service complied with Tennessee law.

Kwang Yong Shin has filed several additional certified mail receipts, two addressed to Jae Young Shim and three addressed to Sun Poultry's attorney in this action, Jacob Freeland. (Doc. Nos. 28-1, 29-1, 32-1.) Under Tennessee law, "[t]he defendant's attorney is not deemed an agent appointed to receive service of process absent a factual basis for believing that such an appointment by the defendant has occurred." *Arthur v. Litton Loan Servicing LP*, 249 F. Supp. 2d 924, 929 (E.D. Tenn. 2002). Kwang Yong Shin has not identified any basis in the record here to conclude that Sun Poultry's attorney is authorized to accept service of process on its behalf. Kwang Yong Shin's attempts to serve Freeland by certified mail therefore do not satisfy Tennessee law.

The two remaining certified mail receipts are addressed to Jae Young Shim. (Doc. Nos. 28-1, 29-1.) The first receipt, which is addressed to Jae Young Shim's home address in Woodstock,

is unsigned and therefore insufficient to demonstrate service of process under Tennessee Rule 4.03.

The second receipt shows that a mailing sent to Jae Young Shim at an address in Canton, Georgia, was delivered on February 15, 2025. (Doc. Nos. 28-1, 29-1.) While it appears that the receipt signature reflects three names, the signature is not legible, and the boxes next to the signature line marked "agent" and "addressee" are blank, as is the space below the signature line for the receiver's printed name. (Doc. No. 29-1, PageID# 170.) Kwang Yong Shin filed USPS tracking information for the same mailing showing that an "item was delivered to an individual at the address" in Canton on February 15, 2025, but the individual is not identified. (Doc. No. 28-1, PageID# 159.)

Sun Poultry has not addressed the sufficiency of this particular service attempt and has not argued that Jae Young Shim is not authorized to accept service of process on Sun Poultry's behalf. Public records available on the Georgia Secretary of State's website identify Jae Young Shim as Sun Poultry's chief executive officer (CEO), chief financial officer (CFO), secretary, and registered agent and identify Sun Poultry's principal office address as the Canton address that appears on the signed certified mail receipt. Ga. Sec'y of State, Ga. Corps. Div., *Business Search*, https://ecorp.sos.ga.gov/businesssearch (search "Business Name" field for "Sun Poultry Service Inc."; then click "Sun Poultry Service, Inc." hyperlink). The Court may take judicial notice of these public records in determining the sufficiency of service under Rule 12(b)(5). *See Pitt v. Quality Carriers, Inc.*, Case No. 3:24-cv-00629, 2025 WL 949991, at *2 n.1 (M.D. Tenn. Mar. 28, 2025) (taking "judicial notice that [defendant] has a registered agent for service of process in Tennessee, readily available through a business entity search on the Tennessee Secretary of State's website"); *Tombragel v. Oral & Facial Surgery Assocs., Drs. Perry, Morrison & Waters, LLC*, Case

15

No. 1:24-cv-14, 2024 WL 3638118, at *3 n.2 (S.D. Ohio Aug. 2, 2024) ("The Court can take judicial notice of the address listed on the Ohio Secretary of State's website for [defendant's] registered agent."). The record therefore supports a finding that Jae Young Shim is "an officer or managing agent" or "other agent authorized by appointment or by law to receive service on behalf of" Sun Poultry pursuant to Tennessee Rule 4.04(4). Tenn. R. Civ. P. 4.04(4).

Further, contextualizing record evidence supports a finding that the signature on this certified mail receipt is Jae Young Shim's signature. The mailing was addressed to Jae Young Shim at Sun Poultry's principal office and signed for by a recipient with a three-part name. (Doc. Nos. 28-1, 29-1.) More importantly, Sun Poultry has not denied that it is Jae Young Shim's signature or otherwise challenged this proof of service. If Jae Young Shim "indeed never received service, it is not too much to require him at least to file a sworn statement to that effect." *CP Constr., LLC v. Holder*, Civ. No. 3:06-1153, 2008 WL 163057, at *2 (M.D. Tenn. Jan. 15, 2008); *see also id.* (finding illegible signature on return receipt addressed to defendant was "presumably" defendant's signature absent defendant's denial).

Accordingly, the signed certified mail receipt showing that a mailing addressed to Jae Young Shim was delivered to Sun Poultry's principal office in Canton on February 15, 2025, "is prima facie evidence that [Sun Poultry] received service[.]" *Id.*; *see also Clark v. UBS*, No. 3:19-cv-00510, 2022 WL 2751528, at *2 (M.D. Tenn. July 13, 2022) (quoting *Montgomery, Zukerman, Davis, Inc. v. Diepenbrock*, 698 F. Supp. 1453, 1461 (S.D. Ind. 1988), for the proposition that "'plaintiff's return receipt establishe[d] a prima facie case of proper service'" where defendant did "'not deny'" that "'illegible'" signature was "his or her agent's signature'"). Absent Sun Poultry's argument otherwise, the Court should find that Kwang Yong Shin effected timely service of

process on Sun Poultry by certified mail on February 15, 2025, and that Sun Poultry's motion to dismiss this action for insufficient service under Rule 12(b)(5) should be denied.

## B. Sufficiency of the Complaint

Sun Poultry argues that Kwang Yong Shin's complaint fails to comply with Rule 8(a)(2) and Rule 10(b) because it is "a shotgun pleading [ ] that [ ] contains conclusory, vague, and immaterial facts that do not clearly connect to a particular cause of action" and "does not separate each cause of action into a separate count." (Doc. No. 9, PageID# 53.) As stated above, Rule 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). And, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." *Id.*

As a threshold matter, the Court should find that Sun Poultry's motion is properly construed as a motion for a more definite statement under Rule 12(e) rather than a motion to dismiss under Rule 12(b)(6) for failure to state a claim. Sun Poultry does not argue that Kwang Yong Shin failed to allege the essential elements of his claims. "Indeed, [Sun Poultry] does not even recite the legal standards or elements for race discrimination claims under Title VII . . ., age discrimination under the ADEA, or retaliation claims under . . . [either] statute[ ]." *Loggins v. Costco Wholesale Corp.*, No. 2:22-cv-02026, 2022 WL 2161521, at *3 (W.D. Tenn. June 15, 2022). Instead, Sun Poultry argues generally that "a claim cannot survive a motion to dismiss [under Rule 12(b)(6)] if the plaintiff has not pleaded sufficiently plausible facts to support a 'viable legal theory' with respect to all material elements of each claim." (Doc. No. 9, PageID# 53 (quoting *Eidson v. Tenn. Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007))). But on a Rule 12(b)(6) motion to dismiss,

"[t]he moving party has the burden of proving that no claim exists," and Sun Poultry has not met its burden to show why the claims of this complaint are subject to dismissal. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *see also* 5B Wright & Miller § 1357 (4th ed. suppl. May 2025) ("Ultimately, the burden is on the moving party to prove that no legally cognizable claim for relief exists."). Sun Poultry's central argument is that "[i]t is impossible . . . to interpret the application of [Kwang Yong Shin's] allegations to any particular cause of action, and, therefore, impossible for [Sun Poultry] to respond." (Doc. No. 9, PageID# 54.) And "arguing that a complaint is 'indecipherable' without challenging the sufficiency or plausibility of its allegations falls under Rule 12(e), not Rule 12(b)(6)." *Loggins*, 2022 WL 2161521, at *3 (collecting authority). "Indeed, courts often address whether a complaint violates Rule 10(b) in the context of motions under Rule 12(e)." *Id.* (collecting authority).

Whether analyzed under Rule 12(b)(6) or Rule 12(e), however, Kwang Yong Shin's complaint does not constitute an impermissible shotgun pleading. First, the Court recognizes that Kwang Yong Shin appears pro se, used a court-authorized form to style his complaint, and, for the most part, stated the facts underlying his claims as that form directed him to do—by "[s]tat]ing] how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct . . . [and a]ttach additional pages if needed." (Doc. No. 1.) Second, the form complaint clearly identifies Kwang Yong Shin's Title VII and ADEA causes of action and names Sun Poultry as the lone defendant. (*Id.*) The complaint, thus, is not a typical "'shotgun pleading' . . . aris[ing] in disputes involving multiple defendants. It is not as if '[t]he pleading fails to provide notice regarding which specific defendant is liable for which [claim].'" *Loggins*, 2022 WL 2161521, at *3 (first alteration in original) (quoting *Banks v. Bosch Rexroth Corp.*, Civ. Action No. 5:12-345,

2014 WL 868118, at *7 (E.D. Ky. Mar. 5, 2014)). Moreover, Kwang Yong Shin's complaint "connect[s] specific facts or events with the various causes of action [ ]he assert[s]." *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 392 (6th Cir. 2020) (quoting *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013)). For example, Kwang Yong Shin alleges that Sun Poultry terminated his employment in "retaliation for [Kwang Yong Shin's] whistleblowing activities" including "pursuing legal action to expose [Sun Poultry's] unlawful and discriminatory practices." (Doc. No. 1, PageID# 16.) Kwang Yong Shin's complaint is thus "sufficient to put [Sun Poultry] on notice as to the nature of the allegations against it" and "is not so vague or ambiguous as to make it unreasonable to use pretrial devices to fill any possible gaps in detail." *McClanahan*, 2019 WL 1755504, at *2 (citing *Midgett v. KSP Head Chaplain*, Civ. Action No. 5:11-CV-P132, 2012 WL 4098991, at *4 (W.D. Ky. Sept. 17, 2012)).

Finally, Sun Poultry makes a one-sentence argument that, "[a]lternatively, this Court should strike the allegations in the Complaint." (Doc. No. 9, PageID# 55.) Sun Poultry does not identify which allegations it asks the Court to strike and offers no argument or authority to show why employing Rule 12(f) is appropriate here. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived[.]" *United States v. Persaud*, 866 F.3d 371, 385 (6th Cir. 2017) (first alteration in original) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

For these reasons, the Court should deny Sun Poultry's motion.

## IV.     Recommendation

The Magistrate Judge RECOMMENDS that Sun Poultry's motion to dismiss, for a more definite statement, or to strike (Doc. No. 8) be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt

of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

       Entered this 2nd day of June, 2025.


_____
ALISTAIR E. NEWBERN
United States Magistrate Judge