**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**COOKEVILLE DIVISION**

| | | |
|---|---|---|
| **KWANG YONG SHIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No 2:25-cv-00003** |
| | ) | |
| **SUN POULTRY SERVICES INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# MEMORANDUM OPINION

Kwang Yong Shin spent about seven years sexing chicks for Sun Poultry Services Inc. ("Sun Poultry"). That work ended in May 2024 under disputed circumstances. Sun Poultry says Shin voluntarily resigned. Shin says that Sun Poultry ended his employment because of his age and race and in retaliation for his previous litigation against the company. Both sides move for summary judgment. (Doc. Nos. 89, 100).

Before the Court is the Report and Recommendation ("R&R") by Magistrate Judge Luke A. Evans recommending that the Court deny Shin's motion and grant Sun Poultry's motion. (Doc. No. 115). The R&R found genuine disputes of material fact about whether Shin was an employee or an independent contractor (Id. at 9–11), but concluded that dismissal was required because Shin voluntarily resigned and suffered no adverse employment action. (Id. at 13–15). Shin filed objections (Doc. No. 116), Sun Poultry responded (Doc. No. 117), and Shin filed a reply (Doc. No. 120).

For the reasons below, the Court will sustain in part and overrule in part Shin's objections and adopt in part and reject in part the R&R. The Court finds that genuine disputes of material fact remain regarding whether Shin voluntarily resigned and thus whether Sun Poultry took adverse employment action against him. But the record contains no evidence that his race or age

or retaliation for his prior litigation caused that separation. The Court will deny Shin's motion, grant Sun Poultry's motion, and dismiss this case.

## I. <u>Factual Background and Undisputed Facts</u>

The R&R accurately recounts the factual and procedural history of this case. (Doc. No. 115 at 2–7). The Court accepts those facts and summarizes only those necessary to this ruling.

Shin worked for Sun Poultry under a written agreement that labeled him an independent contractor. (<u>Id.</u> at 2). The agreement required Shin to notify Sun Poultry "in writing, thirty (30) days in advance to terminate this Agreement." (<u>Id.</u>)

Shin's discrimination claim rests on what he heard from others. He became concerned by conversations and rumors that he had heard around the facility that Sun Poultry was phasing out older Korean chicken sexers in favor of younger Mexican workers. (<u>Id.</u> at 3). He also testified that Yon Ok Casey, Sun Poultry's hatchery leader at the hatchery where Shin worked, once told him that some older Korean workers were being replaced by younger workers from Mexico. (<u>Id.</u>) Shin acknowledged during his deposition that "[t]here is no evidence here today, but it—it was obvious there was a many employee [sic] who are sorter with the older ages [sic]. They were let go and more Mexican people were replacing them and it was—it was just obvious that it was happening." (<u>Id.</u>)

Shin's retaliation claim rests on his prior litigation against Sun Poultry. In September 2023, Shin filed an EEOC complaint alleging race, national-origin, and age discrimination, and he sued Sun Poultry in the Northern District of Georgia. (Doc. No. 104 ¶¶ 27–29). That district court dismissed Shin's suit in March 2024. Shin appealed to no avail. (<u>Id.</u> ¶¶ 29–30). Shin told Casey about the case. (Doc. No. 115 at 3).

The parties dispute how Shin's work at Sun Poultry ended. Sun Poultry's account comes from Casey and from Sun Poultry's owner, Jae Young Shim. Casey says that on the evening of

March 7, 2024, Shin told her "that he was resigning from his position, that he could no longer work for Sun Poultry, that he was hired by a warehouse in Atlanta, Georgia, and that his last day with the Company would be May 30, 2024." (Id. at 4). She says that when she asked why, Shin answered, "don't ask me anything," and that when she asked the next morning whether he was sure, he said, "I'm not going to change my mind." (Doc. No. 104 ¶¶ 51–52). Casey then texted Jin Min Chun, Sun Poultry's vice president, "Mr. Shin says he will work until May 30th and then quit because he is moving to Atlanta." (Id. ¶ 53). Sun Poultry accepted the resignation even though Shin never gave written notice of his resignation as required under the parties' written agreement. (Id. ¶ 56). According to Casey, Shin told her around May 9 that he had changed his mind and wanted to keep working until his lawsuit was over, and she told him to contact Chun. (Id. ¶ 58). Sun Poultry says that it stood by its acceptance of the oral resignation because hatchery demand was low and it did not need another sexer. (Id. ¶ 62).

Shin tells a different story. He denies that he ever told Casey he was resigning and testified that, if Casey understood him that way, she misunderstood him. (Doc. No. 115 at 4). He testified that he was told to leave by May 30, 2024. (Id.) He says he mentioned to Casey that he was considering a move to Atlanta for his family's safety, but that a move would not have affected his work because he rented housing near the hatchery. (Doc. No. 104 ¶¶ 34, 50, 53). He denies taking a warehouse job in Atlanta. (Id.) He says that about three weeks before May 30, Casey told him the company wanted him to leave, and he disputes Casey's account of their May conversation. (Id. ¶ 50). On May 13, 2024, Shin texted Chun in Korean. (Id. ¶ 61). Sun Poultry's translation of Shin's message, which Shin does not materially dispute, says "I apologize, Mr. Jeon [Jin], but I will continue working." (Id.) Shin's last day was May 30, 2024, and he could not enter the hatchery after that date. (Id. ¶ 65).

## II. Legal Standard

The Court reviews de novo any portion of the R&R to which a party specifically objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). The Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). In deciding a motion for summary judgment, the Court reviews all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter, and instead determines only whether the evidence presented reveals a disputed material issue of fact for the jury to decide. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; there must be evidence on which the jury could reasonably find for the nonmoving party. Rodgers, 344 F.3d at 595.

## III. Analysis

Shin raises six objections. (Doc. No. 116). His first four objections challenge the R&R's conclusion that he voluntarily resigned. He argues in his first objection that the R&R resolved a factual dispute about his resignation. (Id. at 2–3). He argues in his second objection that the R&R read Shin's May 13 text against him and relied on Sun Poultry's internal messages to establish his

intent. (Id. at 3–5). He argues in his third objection that the R&R gave no weight to the missing written notice of resignation. (Id. at 5–6). He argues in his fourth objection that the R&R wrongly concluded that Shin suffered no adverse employment action. (Id. at 6–7). He argues in his fifth and sixth objections that the dismissal of his discrimination and retaliation claims was improper. (Id. at 7–8). Shin also asks the Court to preserve the R&R's employment-status finding, to order a trial on misclassification, and to consider new evidence. (Id. at 8–17).

The Court will sustain objections one through four. There are classic genuine disputes of material fact about whether Shin resigned, and accordingly about whether Sun Poultry took adverse employment action against him. The Court will sustain objections five and six only to the extent they rest on the R&R's adverse-action conclusion. It will overrule them otherwise because Shin has failed to present admissible evidence that nothing connects his separation to his race, his age, or his prior litigation. Shin's remaining objections do not change that result. Accordingly, the Court will deny Shin's motion (Doc. No. 89) and grant Sun Poultry's motion (Doc. No. 100).

### A. Genuine Disputes of Material Fact Remain Regarding Whether Shin Resigned

The R&R found no adverse employment action because it concluded that Shin voluntarily resigned. (Doc. No. 115 at 13–15). It reasoned that Casey's text to Chun and Shin's May 13 text "would make no sense unless something happened around March 7, 2024 that caused defendant to believe that plaintiff would be separating." (Id. at 14). It then read Shin's May 13 text as an attempt to reverse a resignation. (Id.) On de novo review, the Court finds the Magistrate Judge's conclusion to be in error.

On Sun Poultry's motion, the Court must draw all reasonable inferences in Shin's favor. The R&R did not do that and instead resolved a factual dispute in Sun Poultry's favor. Shin is a Korean speaker in his sixties who testified through an interpreter and is proceeding pro se. He wrote the May 13 text in Korean. He says the apology reflected respect for workplace seniority,

and that he wrote to Chun because he had been told his work would end and he wanted to keep it. (Doc. No. 116 at 4). That is a reasonable inference in Shin's favor.

Further disputes of material fact regarding the end of Shin's employment remain. Shin testified that he never told Casey he was resigning and that he was told to leave by May 30. (Doc. No. 115 at 4). He denies having a warehouse job in Atlanta. He disputes Casey's account of their May conversation. (Doc. No. 104 ¶¶ 34, 50, 53). It is undisputed that there is no written notice of his resignation as the agreement required. (Id. ¶ 56). The absence of that written notice supports Shin's account.

On this record, a reasonable jury could find that Shin did not voluntarily resign. Because a jury could find that Shin never resigned, a jury could also find that Sun Poultry ended his employment. Whether Shin suffered adverse employment action is thus genuinely disputed. If Casey honestly but mistakenly believed Shin was resigning, the employment action was no less adverse. Her mistaken belief instead bears on why Sun Poultry acted, which goes to whether Sun Poultry acted with discriminatory motive, not whether it took adverse action against him in the first instance.

For those reasons, the Court sustains objections one through four and rejects the R&R's conclusion that Shin suffered no adverse employment action. For the remaining analysis, the Court assumes, as the R&R did, that Shin was an employee.

### B. No Evidence Connects Shin's Race or Age to His Separation

Shin offers no direct evidence of discrimination, so his claim proceeds under the circumstantial evidence burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To make out a prima facie case, Shin must show that (1) he belongs to a protected class, (2) he was qualified for his job, (3) he suffered an adverse employment decision, and (4) he was replaced by a person outside his protected class or treated differently than similarly situated

nonprotected employees. Levine v. DeJoy, 64 F.4th 789, 797 (6th Cir. 2023) (quoting White v. Baxter Healthcare Corp., 533 F.3d 381, 391 (6th Cir. 2008)). If he does so, the burden shifts to Sun Poultry to offer a legitimate, nondiscriminatory reason for its decision. Id. Should Sun Poultry carry that burden, Shin must then show that the legitimate reasons offered by Sun Poultry were not its true reasons, but were a pretext for illegal discrimination. Id. For his ADEA claim, Shin must ultimately show that age was the but-for cause of his separation. Pelcha v. MW Bancorp, Inc., 988 F.3d 318, 323–24 (6th Cir. 2021)

Shin's discrimination claim fails because there is no evidence that he was replaced by a person outside of his protected class or treated differently than similarly situated nonprotected employees. The only proof of discrimination that Shin offers is based on what he heard from others that he interprets as discriminatory. He became concerned by conversations and rumors that he had heard around the facility that Sun Poultry was phasing out older Korean chicken sexers in favor of younger Mexican workers. (Doc. No. 115 at 3). Shin may offer nonhearsay evidence of what he heard around the hatchery to explain why he believed he was being discriminated against. But his belief, however sincere, does not prove Sun Poultry's discriminatory motive. See, e.g., Woythal v. Tex-Tenn Corp., 112 F.3d 243, 247 (6th Cir. 1997) ("[M]ere personal belief, conjecture and speculation are insufficient to support an inference of age discrimination." (quoting Chappell v. GTE Prods. Corp., 803 F.2d 261, 268 (6th Cir. 1986))). Moreover, to prove that older Korean workers were in fact being replaced, the rumors are inadmissible hearsay that the Court cannot consider at summary judgment. Fed. R. Civ. P. 56(c)(2). Casey's alleged comment that some older Korean workers were being replaced by younger Mexican workers, even if admissible, does not change that conclusion because there is no connection to Shin. (Doc. No. 115 at 3). Shin does not offer any other evidence causally connecting that comment to any decision about him.

Sun Poultry says it ended Shin's work because it believed that he had resigned. Even if that belief was mistaken, a dispute about whether Shin wanted to leave is not evidence that Sun Poultry acted because of his race or age. Shin identifies no one who replaced him. He identifies no similarly situated worker outside his protected classes whom Sun Poultry treated better.

The Court thus overrules objection six, except as to the R&R's adverse-action reasoning, and adopts the R&R's recommendation to grant summary judgment to Sun Poultry on Shin's discrimination claim as modified by this above.

### C. No Evidence Connects Shin's Prior Litigation to His Separation

Shin's retaliation claim fails for a similar reason. To make out a prima facie retaliation case, Shin must show that (1) he engaged in protected activity, (2) Sun Poultry knew of it, (3) Sun Poultry then took an action that was materially adverse to him, and (4) a causal connection exists between the protected activity and the adverse action. Laster v. City of Kalamazoo, 746 F.3d 714, 731 (6th Cir. 2014). Causation requires evidence that Sun Poultry would not have ended Shin's work but for his protected activity. Id. (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013)).

Nothing connects Shin's prior litigation against Sun Poultry to the end of his employment. Shin filed his EEOC complaint and the Georgia case in September 2023 (Doc. No. 104 ¶¶ 27, 29), and Casey did not inform Chun that Shin told her that he would be resigning until March 8, 2024 (id. ¶ 53). Casey relayed that message to Chun before Shin appealed the dismissal of the Georgia case on March 29, 2024. (Id. ¶ 30).

That six-month gap is too long, standing alone, to support an inference of causation. There are genuine disputes of material fact about whether Shin resigned, and Shin's own explanation is that Casey misunderstood him. (Doc. No. 115 at 4). A misunderstanding is not evidence of retaliation.

The Court thus overrules objection five, except as to the R&R's adverse-action reasoning, and adopts the R&R's recommendation to grant summary judgment to Sun Poultry on Shin's retaliation claim as modified by this Memorandum Opinion.

**D. <u>Shin's Remaining Objections</u>**

Because Shin's claims fail for lack of evidence of discriminatory or retaliatory motive, the Court need not decide whether Shin was an employee. The Court therefore overrules as moot Shin's objections asking it to preserve the R&R's employment-status finding and to order a trial on misclassification. (Doc. No. 116 at 8–9).

Shin's new exhibits are not properly before the Court because he did not present them to the Magistrate Judge. <u>See, e.g.</u>, <u>The Glidden Co. v. Kinsella</u>, 386 F. App'x 535, 544 (6th Cir. 2010) (declining to review an issue not presented to the magistrate judge). Even considering them, none provides evidence that race, age, or prior litigation motivated Sun Poultry. Exhibit A identifies signature discrepancies among versions of Shin's agreement, which bear only on his employment status. (Doc. No. 116-1). Exhibit B concerns the hatchery access code, which bears on adverse employment action, not discriminatory or retaliatory motive. (Doc. No. 116-2). Exhibit C concerns the payee on Shin's final check and goes to Casey's credibility, which the Court does not weigh at this stage. (Doc. No. 116-3). Exhibit D, an H-2A notice filed by Sun Poultry seeking twelve chicken sexers for September 1, 2026 through July 1, 2027, postdates Shin's separation from Sun Poultry and is thus irrelevant. (Doc. No. 116-4).

## IV. <u>Conclusion</u>

For the reasons above, Shin's objections (Doc. No. 116) will be sustained in part and overruled in part. The R&R (Doc. No. 115) will be adopted in part and rejected in part. The Court rejects the R&R's conclusion that Shin voluntarily resigned and suffered no adverse employment action (<u>id.</u> at 13–15), does not reach Shin's employment status, and adopts the R&R's

recommendations to deny Shin's motion and to grant summary judgment to Sun Poultry on Shin's discrimination and retaliation claims as modified by this Memorandum Opinion. Shin's motion for summary judgment (Doc. No. 89) will be denied. Sun Poultry's motion for summary judgment (Doc. No. 100) will be granted. This case will be dismissed.

An appropriate order will enter.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE